[Cite as *Sauer v. Semer*, 2010-Ohio-1931.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

NICHOLAS M. SAUER, ET AL.,

    PLAINTIFFS-APPELLANTS,               CASE NO. 1-09-62

    v.

CATHY SEMER, ET AL.,                O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2008 1528

Appeal Dismissed

Date of Decision:   May 3, 2010

APPEARANCES:

    *Gregory D. Wilson*  for Appellants

    *William C. Emerick*  for Appellees, Semer and BGG Inv.

    *Dawn M. Frick and Edward J. Dowd*  for Appellees,
    Yocum Realty and Brenda Caprella

**PRESTON, J.**

{¶1} Plaintiffs-appellants, Nicholas Sauer and Brooke Sauer (hereinafter collectively "the Sauers"), appeal the judgment of the Allen County Court of Common Pleas, which granted defendants-appellees', Brenda Caprella and Yocum Realty (aka New Yocum) (hereinafter, respectively "Caprella" and "Yocum Realty"), motion for summary judgment. For the reasons that follow we dismiss for lack of a final appealable order.

{¶2} This matter stems from the purchase of property located at 500-550 Brower Road, Lima, Ohio (hereinafter "the property"), which consisted of three acres of property, a house, and a few outbuildings. Essentially, around July 2004, Nicholas Sauer (hereinafter "Sauer") was looking to purchase property for the purpose of re-locating his insurance office that was currently at 410 Brower Road. While driving to work one day, he drove past 500-550 Brower Road and saw a "For Sale" sign in the yard with Caprella and Yocum Realty's name on it. Sauer contacted Caprella and the two met at the property the next day on July 22, 2004. During his first walk-through of the property with Caprella, Sauer noticed that the "basement floor [looked] like it was damp or that there was water stains," and noticed water stains on the ceiling of the first floor. Caprella informed Sauer that according to the disclosure form that there was "slight seepage in the basement," and advised him that the sump pump may not have been working. As to the water

stains in the first floor, Caprella advised Sauer that there had been a leak in the roof previously, but that it had been replaced within the last six months.

{¶3} Four days later, on July 26, 2004, after only looking up the property on the county auditor's website for its taxes and market value, Sauer contacted Caprella and told her that he was ready to make an offer. Caprella and Sauer met again at the property, and, after doing another walk-through, Sauer offered to purchase the property for $80,000, which was verbally accepted.

{¶4} On August 3, 2004, Caprella and Sauer met again, this time at his office, and prepared the written offer, which was contingent upon a property inspection. Sauer also signed a Dual Agency Agreement, which indicated that Sauer knew Caprella was representing both him and the sellers-defendants, Cathy Semer (hereinafter "Semer"), who was also the president of BGG Investment Holdings, Inc. (hereinafter "BGG").

{¶5} Sauer hired a home inspector, Don Faulkner (hereinafter "Faulkner"), and met Faulkner at the property on the day of the inspection. Sauer asked Faulkner to inspect the property and determine if there were any reasons why Sauer should not purchase the property. Because of his concerns with the damp basement, Sauer showed Faulkner the basement. Faulkner indicated that the basement was "very damp" and thought that the problem was because the ground outside the house needed to be re-graded since it sloped towards the house.

{¶6} Regardless, on August 23, 2004, Sauer closed on the property. Soon after closing, Sauer and his wife, Brooke Sauer (hereinafter "Brooke"), began remodeling the house on the property. On several occasions Brooke brought the couple's newborn daughter with her while she worked on the flooring in the house. On or about September 22, 2004, while Brooke was working at the house, a man named Richard Commons (hereinafter "Commons") came to the house. He advised Brooke that he had been a previous tenant at the property and that he believed there was mold in the property. Brooke immediately got her newborn baby and left the property. Sauer met with Commons shortly thereafter and again Commons claimed that there was mold in the property, which he believed had caused him and his son health problems to the extent that they had to break the lease and leave the property. Sauer contacted his attorney and faxed a letter to Caprella advising her of what he had learned and requesting that the seller buy the property back from him. Sauer requested a response within 24 hours. Upon receiving the fax, Caprella attempted to contact Sauer, but was only able to leave him a voice message, and then she contacted Semer to discuss the matter with her. Sauer never returned Caprella's phone call.

{¶7} Nevertheless, on January 19, 2005, the Sauers filed their original complaint, Case No. CV2005-0053, against seller-defendant Cathy Semer. On January 25, 2005, the Sauers amended their complaint to include Semer's

company, BGG, as an additional defendant. Moreover, after conducting several depositions, on October 26, 2005, the Sauers filed their second amended complaint and added Yocum and Caprella as defendants. The Sauers alleged claims of fraudulent inducement, assault, intentional infliction of emotional distress, and violations of R.C. 5302.30 and the agency agreement.

{¶8} On September 29, 2006, Semer and BGG filed a motion for summary judgment, and Yocum Realty and Caprella filed a separate motion for summary judgment. Thereafter, on February 20, 2007, the Sauers filed a memorandum in opposition to both summary judgment motions, attaching nine affidavits in support. On March 20, 2007, and further amended on March 29, 2007, the trial court overruled each of the defendants' motions for summary judgment.

{¶9} On October 25, 2007, all defendants' filed a joint motion in limine to preclude the testimony of Andrew Boester (the Sauers' expert witness), and on October 26, 2007, the trial court granted the defendants' motion to exclude the testimony of Andrew Boester on the basis that "the condition of the property when these tests were done lacks the necessary probative value as to the condition of the subject property at the time Plaintiffs purchased the same." (Case No. CV2005-0053, Oct. 26, 2007 JE). Moreover, the trial court held that the testimony would be "speculative and more prejudicial than probative." (Id.). Subsequently, on

Case No. 1-09-62

October 26, 2007, the Sauers filed their notice of voluntary dismissal under Civ.R. 41(A).

{¶10} On October 24, 2008, the Sauers re-filed their complaint, Case No. CV2008-1528, against the same defendants as before and alleged similar claims of contract, fraud, concealment, intentional infliction of emotional distress, and violations of R.C. 5302.30 and the agency agreement. On May 26, 2009, the Sauers filed a motion to transfer the original file into the newly filed case.[1]

{¶11} On August 31, 2009, Yocum Realty and Caprella filed a renewed motion for summary judgment, which the Sauers responded to on October 5, 2009, along with filing a motion to reconsider the testimony of Andrew Boester. On October 15, 2009, Yocum Realty and Caprella filed their reply motion in support of their motion for summary judgment and a memorandum in opposition to the Sauers' motion to reconsider Boester's testimony. Thereafter, on October 21, 2009, the trial court granted "defendant's renewed motion for summary judgment," and entered judgment in "their favor on all counts in their complaint." (Oct. 21, 2009 JE).

{¶12} The Sauers now appeal and raise the following four assignments of error for our review.

---

[1] We note that in the original motion to transfer Case No. CV2005-0053, the Sauers asked to transfer the wrong case number (CV2004-0025) into Case No. CV2008-1528, while the trial court granted this incorrectly stated motion, subsequently, the trial court has issued a corrected order to transfer which indicates the appropriate prior case number, CV2005-0053.

## ASSIGNMENT OF ERROR NO. I

**THE COURT ERRED IN GRANTING SUMMARY JUDGMENT TO A PARTY WHO DIDN'T REQUEST SUMMARY JUDGMENT.**

## ASSIGNMENT OF ERROR NO. II

**THE COURT ERRED IN GRANTING SUMMARY JUDGMENT TO ANY DEFENDANT.**

## ASSIGNMENT OF ERROR NO. III

**THE COURT ERRED BY GRANTING ALL DEFENDANTS' JOINT MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS, ANDREW BOESTER.**

## ASSIGNMENT OF ERROR NO. IV

**THE COURT ERRED BY RULING THAT PLAINTIFFS/APPELLANTS WERE NOT ENTITLED TO PUNITIVE DAMAGES.**

{¶13} Before addressing the merits of the Sauers' assignments of error, this Court must first determine whether the judgment entry appealed from is a final appealable order and is properly before this Court.

{¶14} Here, after the Sauers re-filed their complaint in Case No. CV2008-1538, Yocum Realty and Caprella filed a renewed motion for summary judgment; however, defendants Semer and BGG never filed a renewed motion for summary judgment nor did they join Yocum Realty and Caprella's motion for summary judgment. The trial court ultimately found "that Defendant's Motion is well

-7-

Case No. 1-09-62

taken" and "enter[ed] summary judgment in their favor on all remaining counts in their Complaint." (Oct. 21, 2009 JE). While the Sauers acknowledge that the trial court's judgment entry is unclear and problematic in their first assignment of error, after reading the trial court's judgment entry we find that it is not a final appealable order, and that the matter is not properly before this Court to review.

{¶15} It is well established under Ohio law that a judgment of a trial court will be considered a "final appealable order" only when it can satisfy the requirements of R.C. 2505.02 and, if applicable, the requirements of Civ.R. 54(B). *Stewart v. Midwestern Indemn. Co.* (1989), 45 Ohio St.3d 124, 543 N.E.2d 1200. Moreover, this Court must raise jurisdictional issues sua sponte. Id. See, also, *In re Murray* (1990), 52 Ohio St.3d 155, 159-60, 556 N.E.2d 1169, at fn. 2; *Whitaker-Merrell Co. v. Geupel Const Co.* (1972), 29 Ohio St.2d 184, 186, 280 N.E.2d 922. Because this particular case involves multiple defendants and claims, Civ.R. 54(B) is applicable. Civ.R. 54(B) states:

> **When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other forms of decision is subject to revision at any time before the entry of judgment**

**adjudicating all the claims and the rights and liabilities of all the parties.**

Pursuant to this rule, it is clear that if a trial court's written decision fully disposes of fewer than all of the pending claims or *parties* in a civil action, then the decision will not be considered a "final judgment" unless the trial court also makes an express finding of no just reason for delay. *Smith v. Wyatt*, 5th Dist. Nos. 2003CA 00233, 2005-Ohio-371, ¶10. Absent such a finding, the decision is interlocutory in nature, is not immediately appealable, and can be revised by the trial court at any time prior to the final determination of the entire action. Id.

{¶16} After reviewing the trial court's judgment entry, we agree with the Sauers that the entry is confusing and unclear, and ultimately find that it is not a final appealable order. First of all, the trial court does not specifically or clearly identify the parties it is referring to in its summary judgment entry. At the beginning and end of its judgment entry the trial court only refers to the parties as "Defendant" and "Plaintiff," despite the fact that there are multiple defendants and plaintiffs in this case. (Oct. 21, 2009 JE). Because of this general language, Semer and BGG claim that the trial court considered their motion for summary judgment from the prior case (Case No. CV2005-0053), and as such, also dismissed them from the current case (Case No. CV2008-1528). However, we believe that we can at least find that the trial court's order did not involve Semer and BGG since it was only stated that, "[t]his matter came on for consideration

upon Defendant's *Renewed Motion for Summary Judgment*." (Oct. 21, 2009 JE)(emphasis added). While Semer and BGG claim that the trial court considered its motion for summary judgment from the prior case (Case No. CV2005-0053), Caprella and Yocum Realty were the *only* parties that submitted a renewed motion for summary judgment in this particular case. Therefore, we disagree with Semer and BGG and believe that the trial court was not ordering a dismissal as to BGG and Semer.

{¶17} Nevertheless, it is still not clear to this Court as to which "Defendant" the trial court was referring to in its order. This is because the trial court only referred to a singular defendant when it stated that "[t]his matter came on for consideration upon *Defendant's* Renewed Motion for Summary Judgment, Plaintiff's Brief in Opposition, and *Defendant's* Reply," despite the fact that there were two defendants, Yocum Realty *and* Caprella, who filed a renewed motion for summary judgment. (Oct. 21, 2009 JE)(emphasis added). Thus, we cannot find for certain that the trial court granted summary judgment in favor of both Yocum Realty and Caprella since the trial court only ordered summary judgment to a singular defendant, even though there were two defendants to consider. Despite this, even if we were to assume, based on the trial court's discussion in its judgment entry, that it was ordering a dismissal as to the claims against *both* Yocum Realty and Caprella, since the judgment entry suggests that the trial court

Case No. 1-09-62

was only dealing with Yocum Realty and Caprella, and not Semer and BGG, pursuant to 54(B), if the trial court wanted to grant summary judgment to only selected defendants, it was required to put in the additional language rendering the order final and appealable. See *Smith*, 2005-Ohio-371, at ¶10. However, the trial court only stated that "[t]his is a final appealable Order," and did not add the additional language pursuant to Civ.R. 54(B).

**{¶18}** We further note that upon reading the judgment entry on its face, the entry could be read as an order for partial summary judgment. Despite stating at the end of its judgment entry that "the Court enters summary judgment in their favor on all remaining counts in their Complaint," the trial court only discussed three of the claims alleged against Caprella and Yocum Realty and never addressed the statutory non-disclosure nor the breach of contract issues. (Oct. 21, 2009 JE). While we acknowledge that a trial court does not have to offer any explanation for why it is granting or denying the motion for summary judgment, after reviewing all of the parties' pleadings regarding the renewed motion for summary judgment and the trial court's judgment entry, we are unable to determine whether the trial court intended its order to be a partial dismissal or an entire dismissal, or even as to which party (or parties) the dismissal was ordered.

**{¶19}** Overall, after reviewing the trial court's judgment entry, we find that while the trial court may have intended to dismiss the case as to two of the

defendants, the trial court failed to dismiss the complaint as to the other defendants, thereby leaving the case pending and unresolved with no express finding of "no just reason for delay." Therefore, we find that the order appealed from is not a final appealable order and is not properly before this Court to review.

{¶20} Accordingly, this appeal should be dismissed for lack of jurisdiction.

*Appeal Dismissed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**